IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JONATHON LEE HILL,                    )
                                      )
                Plaintiff,            )
                                      )
                                      )    Case No. CIV-19-346-JFH-KEW
                                      )
COMMISSIONER OF THE SOCIAL            )
SECURITY ADMINISTRATION,              )
                                      )
                Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Jonathon Lee Hill (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 42 years old at the time of the decision. He has a high school education. He has past relevant work as an auto mechanic. He alleges an inability to work beginning on August 31, 2016, due to limitations resulting from back problems (post-surgery), bone spurs, herniated discs, and degenerative disc disease.

### Procedural History

On September 7, 2017, Claimant filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. His application was denied initially and upon reconsideration. On May 6, 2019, ALJ Clifford Shilling conducted an administrative hearing presiding from Fort

Smith, Arkansas, at which Claimant was present. On June 26, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 15, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ erred by adopting the medical opinion of the state agency physician that Claimant could perform light work.

### Evaluation of Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of disorders of the back – discogenic and degenerative (DDD), osteoarthritis, and allied disorders. (Tr. 76). He determined Claimant could perform light work, with other limitations. Claimant could lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six out of eight hours with normal breaks, and sit for six out of eight

4

hours with normal breaks. Push/pull limitations were within the limits for lifting and carrying. Claimant could never climb ladders, ropes, or scaffolds, but he could occasionally stoop. (Tr. 77).

After consultation with the VE, the ALJ determined Claimant could perform the representative jobs of furniture rental clerk, photocopy machine operator, and order caller, which the ALJ found existed in significant numbers in the national economy. (Tr. 80-81). As a result, the ALJ concluded Claimant has not been under a disability from August 31, 2016, through the date of the decision. (Tr. 81).

The ALJ summarized the medical evidence in the decision. Claimant began experiencing back pain after a fall in October of 2008. A February 2012 MRI of Claimant's lumbar spine showed a degenerating disc at L4-L5 with mild broad-based herniation and bilateral pars defects with grade 1 spondylolisthesis at L5-S1. (Tr. 78, 327). In May of 2012, Claimant underwent L4-L5 anterior lumbar interbody fusion and L5-S1 anterior lumbar interbody fusion using PEEK cage, allograft, and local bone. (Tr. 78, 328-31). By January of 2013, Claimant reported to his doctor that he had "near complete resolution of the preoperative symptoms" and by August of 2013, he was back working as a mechanic. (Tr. 78, 336, 339).

Claimant reported back pain to Christopher Bell, M.D., in March of 2016. A CT of the cervical, thoracic, and lumbar spine

revealed postoperative changes at L4-L5 and L5-S1, but there was no acute bony abnormality. (Tr. 78, 397). Claimant was examined on a few more occasions in March and April of 2016, assessed with lumbar strain, and was given pain medications and told to perform back stretches and to exercise. (Tr. 78, 386-90).

Claimant began seeing Luc Balis, M.D., in August of 2016 for his chronic low back pain. He was assessed with chronic low back pain and hypertension. Claimant reported that narcotic pain medicine had been effective in the past, but he was currently taking ibuprofen and Tylenol for pain. Dr. Balis prescribed Claimant medication, including Norco, Gabapentin, and Venlafaxine. (Tr. 78-79, 478-81). Claimant continued to receive follow-up treatment from Dr. Balis for his back pain and hypertension through August of 2017. (Tr. 79, 462-77).

At the recommendation of Dr. Balis, Claimant was examined by Joseph Queeney, D.O., in April of 2017. His chief complaint was back pain. Dr. Queeney noted Claimant took narcotic medication as well as Gabapentin, he had not had physical therapy, and he did not currently take any NSAIDs. Dr. Queeney assessed Claimant with degenerative disc disease (thoracic), chronic midline thoracic back pain, and chronic left-sided low back pain without sciatica. He did not believe Claimant had any "surgical pathology." He told Claimant he needed to treat with NSAIDs, which he ordered for Claimant, and he "precautioned him about the use of strong

narcotics for the management of chronic back pain." (Tr. 79, 377-81).

Claimant was examined by Don E. Hinderliter, M.D., in November of 2017. He was prescribed narcotic pain medication and continued to be prescribed the medication through October of 2018. Dr. Hinderliter determined Claimant suffered from "post-operative back pain syndrome," and he did not suggest that Claimant undergo surgical treatment or that further evaluation was required. (Tr. 79, 420-26, 428-61).

As for the opinion evidence in the record, the ALJ discussed the RFC assessed by state agency physician Walter Bell, M.D., on January 16, 2018. Dr. Bell reviewed the record, and he determined Claimant could perform light work with postural limitations including only occasional stooping and never climbing ladders, ropes, and scaffolds. The ALJ included these limitations in the RFC assessment. (Tr. 79, 154-57).

Claimant contends the ALJ erred in adopting the opinion of state agency physician Dr. Bell, that Claimant could perform light work, as Dr. Bell's opinion only considered evidence in the record through January of 2018, and the ALJ failed to consider the pain management records from Brett Whatcott, M.D. However, there is no error by the ALJ in relying on Dr. Bell's opinion to support the RFC assessment. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 ("The non-examining physician's opinion is an acceptable medical source,

7

which the ALJ was entitled to consider.") (citation omitted).
Moreover, as noted by Defendant, none of Claimant's treatment
providers offered opinions regarding any functional limitations
for Claimant. *See Moua v. Colvin*, 541 F. App'x 794, 797-98 (10th
Cir. 2013) (finding no pertinent medical opinion for the ALJ to
weigh when treatment notes do not offer any medical opinions
concerning abilities and limitations, but merely document
complaints, pain medications, and treatment prescribed); *see also
Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the
ALJ does not need to reject or weigh evidence unfavorably in order
to determine a claimant's RFC, the need for express analysis is
weakened.")

Further, regarding the treatment records from Dr. Whatcott,
Claimant merely argues that the ALJ and Dr. Bell did not consider
these records. However, the records were not considered because
they were not before the ALJ at the hearing or received prior to
his decision on June 26, 2019. Claimant instead submitted Dr.
Whatcott's treatment records and notes to the Appeals Council. The
pertinent social security regulations, revised with an effective
date of January 17, 2017, provide that if a Claimant submits
additional evidence to the Appeals Council after the ALJ's
decision, the Claimant must not only show good cause for submitting
the additional evidence, but the Appeals Council will review the
case if it "receives additional evidence that is new, material,

and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) & (b).

Dr. Whatcott's treatment records show that he began seeing Claimant in November of 2018, because Dr. Hinderliter's clinic shut down. Claimant complained of chronic, mid-low back pain. Dr. Whatcott reviewed Claimant's imaging from 2016 and continued most of Claimant's medication. He did not like that Claimant used two opiods, and he planned to safely taper off Claimant's medication to a reasonable level. Dr. Whatcott also was surprised Claimant had not tried physical therapy and wanted Plaintiff to do it soon. (Tr. 87-92). By his visit in December of 2018, Claimant reported he was doing well on medications and had no significant changes with pain. (Tr. 93-94). Throughout his follow-up visits in 2019, Claimant reported that his treatment had enabled him to continue or improve in the areas of walking, sleeping, working, housework, mood, self-care, exercise, and relationships. (Tr. 9-12, 13-16, 17-21, 22-26, 27-31, 32-37).

In its notice of denial, the Appeals Council acknowledged the additional evidence submitted by Claimant, which included Dr. Whatcott's treatment records dated November 16, 2018, through June 26, 2019. The Appeals Council received the records on July 18, 2019. It concluded the "evidence does not show a reasonable

probability that it would change the outcome of the decision[,]"
and denied Claimant's request for review. (Tr. 1-3). Claimant has
failed to explain how the additional evidence shows "a reasonable
probability" that the records from Dr. Whatcott "would change the
outcome of the decision."

"[R]esidual functional capacity consists of those activities
that a claimant can still perform on a regular and continuing basis
despite his or her physical limitations." *White v. Barnhart*, 287
F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity
assessment "must include a narrative discussion describing how the
evidence supports each conclusion, citing specific medical facts
. . . and nonmedical evidence." Soc. Sec. R. 96-8p, 1996 WL 374184,
*7 (July 2, 1996). The ALJ must also discuss the individual's
ability to perform sustained work activities in an ordinary work
setting on a "regular and continuing basis" and describe the
maximum amount of work-related activity the individual can perform
based on evidence contained in the case record. *Id*. The ALJ must
"explain how any material inconsistencies or ambiguities in the
evidence in the case record were considered and resolved." *Id*.
However, there is "no requirement in the regulations for a direct
correspondence between an RFC finding and a specific medical
opinion on the functional capacity in question." *Chapo v. Astrue*,
682 F.3d 1285, 1288 (10th Cir. 2012). Here, there is no error in

the ALJ's RFC assessment, as it was supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 4th day of December, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE